**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00004-CMA-MEH

HERBERT BRIGGS,

    Plaintiff,

v.

SHERIFF JOHN MINOR, Summit County, Colorado, Sheriff, and
CAPTAIN ERIK BOURGERIE, Summit County, Colorado Sheriff's Department,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants Sheriff John Minor and Captain Erik Bourgerie's (collectively, "Defendants") Motion for Summary Judgment. (Doc. # 15.)  In this case, Plaintiff Herbert Briggs brings claims for malicious prosecution, unlawful arrest, and First Amendment retaliation pursuant to 42 U.S.C. § 1983.  (Doc. # 25 at 20.)  Plaintiff's claims stem from his allegation that Defendant Bourgerie unlawfully charged him with Attempting to Influence a Public Servant, a felony under Colorado law.  *See* C.R.S. § 18-8-306.  Defendants have asserted that they are entitled to qualified immunity.

**I. BACKGROUND**

The following facts are undisputed, unless otherwise noted.  The Court will elaborate, as needed, in its analysis section.

1

At all relevant times, Plaintiff was a resident of Summit County, Colorado. In late 2006 and into early 2007, Plaintiff began having problems paying child support for his two children. In 2007, Summit County District Court Judge William Ruckriegle held Plaintiff in contempt for his failure to pay child support and sentenced Plaintiff to serve 90 days in the Summit County Jail ("the Jail"). Judge Ruckriegle ordered that Plaintiff be permitted to serve his jail time on alternating weekends; however, Plaintiff failed to report to the Jail on his assigned weekends so he missed time that he had been ordered to serve. Ultimately, Judge Ruckriegle imposed an additional 28-day-sentence for contempt, and ordered that Plaintiff serve his time by June 23, 2009. (Doc. # 15-3.) Plaintiff began to serve his 28 days of jail time on April 17, 2009; thus, his scheduled date of release was May 15, 2009.

At some point, Plaintiff was told by an unnamed sheriff's deputy that he was going to be released on April 24, 2009.[1] (Doc. # 15-2 at 75:3-15; 117:2-7.) On April 23, 2009, Plaintiff wrote a handwritten letter addressed to Defendant Minor, who is the elected Sheriff of Summit County.[2] (Doc. # 15-4.) The letter provides as follows:

---

[1] Plaintiff claims that he was informed by "Defendants" that he would be released on April 24, 2009. (Doc. # 25 at 6, ¶ 14.) However, Plaintiff's affidavit, which he cites to support this assertion, states that "[o]n April 24, 2009, [he] was told by the officials at the front desk of the Summit County Jail that [he] would be released that day." (Doc. # 25-4.) Thus, there is no evidence that either Defendant Minor or Defendant Bourgerie ever told Plaintiff he would be released on April 24, 2009. Plaintiff also alleges that he earned good time credits for being a Trustee, and that these good time credits moved up his release date from May 15, 2009 to April 24, 2009. (Doc. # 25 at 6, ¶ 14.) However, Defendants have produced evidence showing that Plaintiff was entitled to only 2 days of "good time" credit under state law, not 21 days. (Doc. # 31-1.) Thus, notwithstanding Plaintiff's belief that he was entitled to be released on April 24, 2009, the evidence shows that Plaintiff was not eligible for release at that time.

[2] In the letter, Plaintiff requested that the letter be forwarded to Defendant Bourgerie, an employee of the Summit County Sheriff who is also the supervisor of the jail.

2

> I am preparing to file one or more lawsuits against the individuals who are harming my children and persecuting me in re: # 05 DR 62. I am giving you this opportunity to fulfill your civil service oath to "support [,] uphold and defend the Constitution" by standing with me against the tyrannical family court system. **If you waive all attempts to incarcerate me unjustly in this matter you will not be named in these lawsuits**.

(*Id.*) (emphasis added.) Plaintiff testified at his deposition that the purpose of sending this letter was to vent his frustration and let Defendant Minor know that he did not think Defendant Minor was doing the right thing.[3] (Doc. # 15-2 at 39:19-40:2.)

The next day, Defendant Bourgerie interviewed Plaintiff regarding Plaintiff's intentions when he sent the April 23, 2009 letter. After waiving his *Miranda* rights, Plaintiff told Defendant Bourgerie there were approximately 10 people he was intending to sue, and that he believed Defendant Minor should release him from jail. Following this interview, Plaintiff was told that he was under arrest for Attempting to Influence a Public Servant, a felony under Colorado law. Notably, Plaintiff was still incarcerated for contempt when the arrest occurred.[4]

On April 27, 2009, Plaintiff posted bond for the felony charge and was released from jail. This release was a mistake, as he was supposed to still be incarcerated on the contempt charge. Three days later, on April 30, 2009, the Summit County District

---

[3] Plaintiff disputes this fact and asserts that "[o]ne of the reasonable inferences that can be drawn from the letter and Plaintiff's deposition testimony was that the letter was written in order to exhaust administrative remedies so that Plaintiff could in fact file his lawsuit." (Doc. # 25 at 7, ¶ 16.) This is not a reasonable inference to draw. The letter contains nothing related to exhaustion of administrative grievances, and Plaintiff clearly stated his intent during his deposition.

[4] Plaintiff disputes that he was still incarcerated for contempt when the arrest occurred because Plaintiff asserts that he should have been released on April 24, 2009 due to his good time credits. However, as noted, Plaintiff was not supposed to be released until May 15, 2009. *See* note 1, *supra*.

Attorney's Office (the "Summit County D.A.") charged Plaintiff with Attempting to Influence a Public Servant.[5] (Doc. # 15-8.) After Plaintiff rejected several plea offers, the Summit County D.A. filed a motion to dismiss the case on March 19, 2010 (Doc. # 15-9), which was granted by the District Court of Summit County on March 21, 2012. (Doc. # 15-10.) In the motion to dismiss, the Summit County D.A. stated that they did not want to give Defendant a forum to air his grievances against the family law system, and did not want to "expend any further judicial and taxpayer resources by way of court staff time, juror time, or witness time and preparation" in the matter. (Doc. # 15-9 at 2, ¶ 6.)

Plaintiff initiated the instant lawsuit by filing his Complaint on January 3, 2011. (Doc. # 1.) Defendants filed the instant Motion for Summary Judgment on October 13, 2011. (Doc. # 15.) Plaintiff responded on December 5, 2011,[6] and Defendants replied on January 10, 2012. (Doc. ## 25, 31.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a

---

[5] Plaintiff asserts that Defendant Bourgerie charged Plaintiff with violating C.R.S. § 18-8-306. (Doc. # 25 at 10, ¶ 4.) However, under Colorado law, a felony must be charged by either a grand jury indictment, the filing of a felony information, or a complaint by the prosecuting attorney. *See* C.R.S. § 16-5-205. Although Defendant Bourgerie may have said he charged Plaintiff with a violation of § 18-8-306 (see Doc. # 25-1 at 2), he lacked such authority under Colorado law. Rather, Plaintiff was charged by the Summit County D.A. when it filed an information against Plaintiff on April 30, 2009. (Doc. # 15-8.)

[6] In their Reply, Defendants request that Plaintiff's Response be stricken for failure to comply with this Court's Civil Practice Standards. (Doc. # 31.) Defendants are correct that Plaintiff's 24-page Response does not comply with the Court's Practice Standards, which provides that "response briefs shall not exceed twenty pages." CMA Civ. Practice Standards III.G.2. However, in its discretion, the Court will consider Plaintiff's Response because doing so will not prejudice Defendants and Plaintiff's non-compliance is relatively minor.

matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. ANALYSIS

Defendants assert that they are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotation marks omitted)).

"Qualified immunity requires a 'two-step sequence.'" *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *Pearson*, 555 U.S. 223). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)). Only if a plaintiff can satisfy both steps will the assertion of qualified immunity be defeated. *See id.*

### A. CLAIMS AGAINST DEFENDANT BOURGERIE

In this case, Plaintiff alleges that Defendant Bourgerie violated Plaintiff's constitutional rights by unlawfully arresting and charging Plaintiff with violating C.R.S. § 18-8-306, and for retaliating against Plaintiff in violation of the First Amendment. Based on the undisputed facts, the Court finds that Plaintiff has failed to show that Defendant Bourgerie violated Plaintiff's constitutional rights and, thus, Defendant Bourgerie is entitled to qualified immunity.

### 1. Wrongful Detention Claims

Plaintiff alleges that he was falsely imprisoned and maliciously prosecuted in violation of his constitutional rights. At the outset, the Court observes that these are distinct claims. *See, e.g.*, *Wilkins v. DeReyes*, 528 F.3d 790, 797-799 (10th Cir. 2008) (discussing the distinction between a Fourth Amendment claim sounding in false imprisonment and a § 1983 malicious prosecution claim). Essentially, the distinction between these two claims is that malicious prosecution claims concern detention after the institution of legal process, whereas false imprisonment claims concern detention prior to the institution of legal process. *See Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (emphasis removed) ("The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process . . . the 'entirely distinct' tort of malicious prosecution . . . remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."). Thus, claims for false arrest and false imprisonment end once the victim becomes held pursuant to legal process. *See id.*; *see also Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008) (discussing legal framework for wrongful detention claims).

Neither party adequately addressed whether Plaintiff's wrongful detention claim is best construed as a false imprisonment claim, a malicious prosecution claim, or both. *See Wilkins*, 528 F.3d at 799 n.5 (stating that false imprisonment and malicious prosecution claims "can co-exist," although observing that such a situation is unlikely). In their Motion, Defendants discuss only Plaintiff's malicious prosecution claim; in his Response, Plaintiff asserts that he has brought both claims but does not discuss the distinction between claims.

The Court finds that Plaintiff's wrongful detention claim is best construed as a § 1983 malicious prosecution claim. Plaintiff was arrested by Defendant Bourgerie on April 24, 2009 and was charged by the Summit County D.A. six days later on April 30, 2009. The filing of an information constitutes legal process. In most cases, the six days between arrest and the institution of legal process would allow for a false imprisonment claim. In this case, however, Plaintiff was already in the Jail when he was arrested, and legally was to remain in the Jail at least through the April 30, 2009. (Doc. # 15-3.) Thus, to the extent that Plaintiff has brought a false imprisonment claim, the Court cannot perceive how Plaintiff would have suffered any damages from the April 24, 2009 arrest because he was already being legally detained. *See Wallace*, 549 U.S. at 390 ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more."). Regardless of how Plaintiff's claims are construed, however, both a false imprisonment claim and a malicious prosecution claim fail for the same reason: the arrest and filing of an information were both supported by probable cause.

To determine whether Plaintiff has demonstrated a malicious prosecution claim under § 1983, the Court uses the common law elements of malicious prosecution as a starting point in its analysis. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007). One of the elements of a common law malicious prosecution claim is that the plaintiff must show "there was no probable cause to support the original arrest, continued confinement, or prosecution." *Id.* at 1258. Likewise, claims for false arrest or false imprisonment "cannot stand if there was probable cause to arrest." *Trimble v. Park*

*Ctny. Bd. of Comm'rs*, 242 F.3d 390, at *3 (10th Cir. 2000) (unpublished table opinion) (citing *Rose v. City & Ctny. of Denver*, 990 P.2d 1120, 1123 (Colo. App. 1999)).

Defendants contend, and the Court agrees, that Plaintiff has not established a violation of his constitutional rights because probable cause supported the arrest and filing of charges against Plaintiff for violating C.R.S. § 18-8-306, Attempting to Influence a Public Servant.

Section 18-8-306 provides as follows:

> Any person who attempts to influence any public servant by means of deceit or by threat of violence **or economic reprisal** against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

C.R.S. § 18-8-306 (emphasis added). "The critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action." *People v. Norman*, 703 P.2d 1261, 1269 (Colo. 1985). The Court finds that the letter provided sent by Plaintiff to Defendant Minor provided probable cause that Plaintiff was attempting to influence Defendant Minor (a public servant), by threatening him with economic reprisal (in the form of a lawsuit) if Defendant Minor did not release him from jail. Because of the clear threat of economic reprisal contained in this letter,[7] the Court finds that probable cause supported Plaintiff's arrest and the subsequent filing of charges against him.

---

[7] The Colorado Supreme Court has defined "economic reprisal" to mean a "retaliation that is monetary in nature." *People v. Janousek*, 871 P.2d 1189, 1196 n.13 (Colo. 1994). As Defendants assert, defense of a lawsuit, even a frivolous one, can be very costly. Thus, the threat to sue can reasonably be construed as "monetary in nature."

In response, Plaintiff contends that Defendants' theory of what constitutes a threat under C.R.S. § 18-8-306 is "novel" and that under such a theory "no inmate in any Colorado jail or prison could ever file a lawsuit in federal or state court regarding unconstitutional conditions of confinement." (Doc. # 25 at 14.) The Court is not persuaded. Plaintiff seems to argue that this letter was a grievance, and criminalizing such grievances would preclude prisoners from being able to exhaust their administrative remedies. However, no reasonable fact-finder could find that Plaintiff's letter was an attempt to exhaust a grievance as nothing in Plaintiff's letter indicated that he was challenging the conditions of his confinement.[8] The mere fact that Plaintiff was incarcerated when he wrote the letter did give him a constitutional right to make threats against prison officials.

To the extent that Plaintiff asserts that Defendant's theory of what constitutes a violation of C.R.S. § 18-8-306 is "novel," such an assertion seems more applicable to an as-applied challenge to the constitutionality of § 18-8-306 than an argument that Defendant Bourgerie lacked probable cause. On its face, § 18-8-306 has been held constitutional. *See People v. Janousek*, 871 P.2d 1189 (1994). Perhaps there is an argument that prosecuting Plaintiff for violating § 18-8-306 was unconstitutional, although Plaintiff does not develop this argument. However, the constitutionality of C.R.S. § 18-8-306 as applied to these facts is not the issue before this Court. Rather, the issue is whether there was probable cause to charge Defendant under a facially

---

[8] Without question, the First Amendment protects the rights of prisoners to access the courts, which includes the right to file grievances. *See, e.g.*, *Rogers v. Garcia*, No. 08-cv-02821, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (unpublished). However, this letter was not a grievance by which Plaintiff sought access to the courts.

valid statute. Given the plain language of the statute, the letter falls squarely within the meaning of C.R.S. § 18-8-306. Thus, the Court finds that Defendant Bourgerie had probable cause to arrest Plaintiff and the Summit County D.A. had probable cause to charge Plaintiff. Because Plaintiff has not shown a violation of his constitutional rights, Defendant Bourgerie is entitled to qualified immunity on Plaintiff's wrongful detention claims.[9]

2. First Amendment Retaliation Claim

Plaintiff also brings a First Amendment retaliation claim against Defendant Bourgerie, which Defendants did not directly address in their Motion. Nevertheless, Plaintiff has again failed to show a violation of his constitutional rights and Defendant Bourgerie is entitled to qualified immunity on this claim as well.

To bring a First Amendment retaliation claim under § 1983, Plaintiff must show that (1) he engaged in a constitutionally protected activity; (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendants' actions were substantially motivated as a response to Plaintiff's exercise of First Amendment rights. See *Nielander v. Bd. of Ctny. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

---

[9] Assuming *arguendo* that Defendants Bourgerie lacked probable cause to arrest Plaintiff for violating C.R.S. § 18-8-306, Plaintiff cannot show that Defendant Bourgerie violated a clearly established right. To this Court's knowledge (and Plaintiff has not cited anything to the contrary), § 18-8-306 has never been found unconstitutional. Thus, Plaintiff cannot show that his arrest and the subsequent filing of charges against him was an unreasonable application of § 18-8-306. See *Rosenbaum v. Washoe Ctny.*, 663 F.3d 1071, 1078 (9th Cir. 2011) ("Even if the arrest was made without a warrant and without probable cause, however, the officer may still be immune from suit if it was objectively reasonable for him to **believe** that he had probable cause.") (emphasis in original).

The Supreme Court has held that the causation required in a First Amendment retaliatory prosecution claim is "but-for causation, without which the adverse action would not have been taken." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). In *Hartman*, the plaintiff alleged that the police initiated a criminal prosecution against him for his protected speech. Although the plaintiff alleged that the police had a retaliatory motive, the criminal prosecution (the adverse action) had to be initiated by the prosecution. *See id.* at 261-62. Under these circumstances, the Supreme Court held that in order to "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action," the plaintiff must prove an absence of probable cause. *See id.* at 263; *accord McBeth v. Himes*, 598 F.3d 708, 718 (10th Cir. 2010).

The same circumstances that existed in *Hartman* are present here. Plaintiff alleges that Defendant Bourgerie was motivated to retaliate against him for writing his letter.[10] However, it was the Summit County D.A., not Defendant Bourgerie, that charged Plaintiff with a violation of C.R.S. § 18-3-306. (Doc. # 15-8); *see also* C.R.S. § 16-5-205 (providing that a felony must be charged by either a grand jury indictment, the filing of a felony information, or a complaint by the prosecuting attorney). Thus, in order to show causation, Plaintiff must prove an absence of probable cause. As previously discussed, Plaintiff cannot do so. Accordingly, Plaintiff has not established a violation of his First Amendment rights and Defendant Bourgerie is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

---

[10] Because Plaintiff cannot show causation, the Court need not determine whether Plaintiff's letter was constitutionally protected activity.

### B.    CLAIMS AGAINST DEFENDANT MINOR

Plaintiff also brings suit against Defendant Minor in his official capacity as Sheriff of Summit County.[11]  Under § 1983, government officials cannot be held vicariously liable for the misconduct of their subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  Thus, supervisors are liable under § 1983 only "for their own culpable involvement in the violation of a person's constitutional rights."  *Id.*

To establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must show that (1) the supervisor's subordinates violated a constitutional right, and (2) that there exists an affirmative link between the supervisor and the violation.  *See id.*  For the reasons discussed above, Plaintiff has failed to show that Defendant Bourgerie violated Plaintiff's constitutional rights.  Because Plaintiff has not established that Defendant Bourgerie violated one of Plaintiff's constitutional rights, Plaintiff's claims against Defendant Minor necessarily fail.  Thus, Defendant Minor is also entitled to qualified immunity.

### IV.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 15) be GRANTED.  It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE, and the Final Trial Preparation Conference set for October 19, 2012, and the five-day Jury Trial set to commence on November 5, 2012, are VACATED.  It is

---

[11]  The Complaint provides that Defendant Minor "is sued in his official capacity" and is "liable for failure to train and supervise Defendant Bourgerie and for promulgating and enforcing an unconstitutional custom and procedure of intimidating, arresting and bringing criminal charges against any person who has a civil cause of action against the Summit County Sheriff . . . ."  (Doc. # 1, ¶ 4.)

FURTHER ORDERED that Defendants shall have their costs by the filing of a Bill of Costs with the Clerk of the Court within fourteen days of the entry of judgment. Each party shall bear its own attorneys' fees.

DATED:  September  25 , 2012

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge